**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| WildEarth Guardians, | ) | No. CV-09-00574-PHX-FJM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Ken Salazar, Secretary of the Interior, | ) | |
| Defendant. | ) | |
| | ) | |

WildEarth Guardians challenges the Secretary of the Interior's finding on a petition to list the Gunnison's prairie dog under the Endangered Species Act of 1973 ("ESA"), 16 U.S.C. § 1533.  The court has before it the plaintiff's motion for summary judgment (doc. 51), the defendant's response and cross motion for summary judgment (doc. 59), the plaintiff's reply and response (doc. 61), and the defendant's reply (doc. 66).  We also have before us briefs of amici curiae Arizona and New Mexico Cattle Growers' Associations (doc. 56) and the Board of County Commissioners of the County of Gunnison, Colorado ("Gunnison County") (doc. 60).  In addition, we have before us the defendant's motion to strike the plaintiff's employee declarations (doc. 59-2) and the plaintiff's response (doc. 61-1); the defendant's motion to strike Gunnison County's amicus brief (doc. 67), Gunnison County's response (doc. 71), and the defendant's reply (doc. 73); and the defendant's motion

1   to strike the plaintiff's "reply" to its statement of facts (doc. 69), the plaintiff's response (doc.
2   72), and the defendant's reply (doc. 74).

3        As a preliminary matter, we deny as moot the defendant's motion to strike three
4   declarations by the plaintiff's employees attesting to the personal and professional harm
5   caused by the defendant's finding. PSOF, exs. 1-3. The plaintiff offers the declarations to
6   establish Article III standing, a purpose for which they are sufficient. See Lujan v. Defenders
7   of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992). We do not consider them
8   for any other purpose. We also deny as moot the defendant's motion to strike Gunnison
9   County's amicus brief. The defendant contends that Gunnison County attempts to introduce
10  new claims through its brief, but we consider an amicus brief only insofar as it is helpful to
11  understand the parties' claims. Finally, we grant the defendant's motion to strike the
12  plaintiff's "reply" in support of its statement of facts because LRCiv 56.1 does not allow a
13  reply.

**I**

15       The ESA provides "a means whereby the ecosystems upon which endangered species
16  and threatened species depend may be conserved" and "a program for the conservation of
17  such endangered species and threatened species." 16 U.S.C. § 1531(b). Under § 1533(a)(1),
18  the defendant determines "whether any species is an endangered species or a threatened
19  species because of" the present or threatened destruction of its habitat or range,
20  overutilization, disease, predation, inadequate regulation, or other natural or manmade
21  factors. "The term 'endangered species' means any species which is in danger of extinction
22  throughout all or a significant portion of its range." Id. § 1532(6). "Threatened species," in
23  turn, "means any species which is likely to become an endangered species within the
24  foreseeable future throughout all or a significant portion of its range." Id. § 1532(20). "The
25  term 'species' includes any subspecies of fish or wildlife or plants, and any distinct
26  population segment of any species of vertebrate fish or wildlife which interbreeds when
27  mature." Id. § 1532(16). The defendant must publish lists of all species determined to be

28

1  endangered or threatened.  Id. § 1533(c)(1).  The ESA then provides protection to
2  endangered and threatened species.  Id. §§ 1533(d), 1536(a)(2), 1538.

3      In 2004, the plaintiff's predecessor petitioned the defendant to list the Gunnison's
4  prairie dog as an endangered or threatened species.  See id. § 1533(b)(3)(A). The Gunnison's
5  prairie dog is a ground squirrel which inhabits Arizona, Colorado, New Mexico, and Utah.
6  If a petition presents substantial information that the action may be warranted, the defendant
7  must find that the action is (1) not warranted, (2) warranted, or (3) warranted but "precluded
8  by pending proposals to determine whether any species is an endangered species or a
9  threatened species" and "expeditious progress" is being made to list or delist species.  Id.
10  § 1533(b)(3)(B).  On February 5, 2008, the defendant found that listing the Gunnison's
11  prairie dog was warranted within the "montane portion" of its range in central and south-
12  central Colorado and north-central New Mexico and not warranted within the remaining
13  "prairie portion" of its range.  Tr. at 18755 (finding published at 73 Fed. Reg. 6660).  The
14  defendant nevertheless found the listing precluded by higher priority actions.  Id.

15      The defendant identified the Gunnison's prairie dog as a single species.  He concluded
16  that the "montane prairie dogs" could not be considered a "subspecies" or a "distinct
17  population segment," although future research might support such a designation.  Id. at
18  18756.  He estimated that the occupied habitat of the Gunnison's prairie dog declined from
19  24,000,000 acres in 1916 to 500,000 or fewer acres in 2008.  The defendant attributed most
20  of the decline to plague, which decimates prairie dog colonies.  He found that plague was not
21  a significant threat to the Gunnison's prairie dog throughout its range, but that it was in the
22  montane portion of its range because of climate, geography, and population structure.  The
23  defendant also found that the montane portion of the Gunnison's prairie dog's range was a
24  "significant portion of its range" within the meaning of the ESA's definitions of endangered
25  and threatened species, based on its size and the importance of geographic and genetic
26  diversity to the species' persistence.  He then made a decision that divides the parties here.
27  He determined that "the Gunnison's prairie dog does not warrant listing throughout its entire
28  range, but that populations within the montane portion of its range are significant to the

continued existence of the species and warrants listing in that portion only." Tr. at 18773-74. He also concluded that "listing the montane Gunnison's prairie dog" was precluded by higher priority actions. Id. at 18774. He either assumed that the statute permits listing an endangered or threatened species in only a part of its range, or he assumed that a portion of a species can be listed as an endangered or threatened species. Before this court, the defendant construes his finding as an attempt to do the latter, presumably because § 1533(c)(1) requires him to list "endangered species" and "threatened species," not parts of a species' range.

The plaintiff challenges the defendant's Gunnison's prairie dog finding under the citizen-suit provision of the ESA, 16 U.S.C. § 1540(g), and the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. It alleges that the defendant impermissibly determined that something other than a species was an endangered or threatened species which warranted listing. It also alleges that the defendant impermissibly found that the Gunnison's prairie dog did not warrant listing in its entirety. In addition, the plaintiff alleges that the defendant arbitrarily divided the Gunnison's prairie dog into montane and prairie portions. Finally, the plaintiff challenges the defendant's determination that a warranted listing was precluded by pending proposals.

## II

When the defendant's actions are challenged under the ESA or the APA, we apply the APA standard of review. W. Watersheds Project v. Kraayenbrink, Nos. 08-35359, 08-35360, 2010 WL 3420012, *6 (9th Cir. Sep. 1, 2010). The APA standard is highly deferential. We may set aside final agency action if, on the record before the agency, it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). On questions of statutory interpretation, we first consider "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2781 (1984).

The plaintiff claims that the defendant's conclusion that the "montane Gunnison's prairie dog warrants listing" is "not in accordance with law" because endangered and threatened species are defined as species under the plain language of the ESA and the montane Gunnison's prairie dog is not a species.   As mentioned above, "[t]he term 'endangered species' means any species which is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6).  "The term 'threatened species' means any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." Id. § 1532(20).  And "[t]he term 'species' includes any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." Id. § 1532(16). The plaintiff points out that the defendant concluded that the Gunnison's prairie dog was a single species and the "montane prairie dogs" could not be designated as a subspecies or a distinct population segment.  Thus, it contends, and the defendant does not dispute, that the montane Gunnison's prairie dog does not constitute a "species" under the ESA.   There is no montane Gunnison's prairie dog– only Gunnison's prairie dogs in the mountains. Because the ESA's definitions of "endangered species" and "threatened species" both refer to "any species which . . . ," the plaintiff argues that the montane Gunnison's prairie dog cannot be an endangered or threatened species because it is not a species.

The defendant contends that "[a]n endangered species can be the entire species if in danger of extinction throughout all of its range, or a portion of a species, where it is in danger of extinction in just a significant portion of its range." Cross Motion for Summary Judgment at 8.  But this is quite different from Congress's definition of an endangered species.  The defendant proposes to split a clause which modifies "species," a defined term under the ESA, and add "a portion of a species" in the middle.  The defendant claims to have arrived at this construction through an interpretation of "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6).  The defendant argues that he may offer a permissible interpretation of this clause because the United States Court of Appeals for the Ninth Circuit found it "inherently ambiguous" in Defenders of Wildlife v. Norton,

258 F.3d 1136, 1141 (9th Cir. 2001). The court did so because "to speak of a species that is 'in danger of extinction' throughout 'a significant portion of its range' may seem internally inconsistent, since 'extinction' suggests total rather than partial disappearance." Id. The court rejected the defendant's interpretation of the clause, which had assumed "that a species is in danger of extinction in 'a significant portion of its range' only if it is in danger of extinction everywhere." Id. It held that "a species can be extinct 'throughout . . . a significant portion of its range' if there are major geographical areas in which it is no longer viable but once was." Id. at 1145.

Here, the defendant's Gunnison's prairie dog finding concluded that "a portion of a species' range is significant if it is part of the current range of the species and is important to the conservation of the species because it contributes meaningfully to the representation, resiliency, or redundancy of the species." Tr. at 18770. Whatever the propriety of this interpretation, the defendant fails to explain how it leads to his conclusion that "a portion of a species" can be introduced in the middle of Congress's definition of an endangered species. Indeed, he does not purport to have interpreted the words "any species" as the object of the verb "means" in Congress's definition. 16 U.S.C. § 1532(6). Instead, the defendant offers two arguments to support his contention that Congress did not clearly define endangered and threatened species as species.

First, the defendant argues that, if only species can be endangered or threatened, Congress's use of "throughout all . . . of its range" would be rendered superfluous. The defendant contends that if a species were an endangered species whenever it was "in danger of extinction throughout . . . a significant portion of its range," he would never need to independently assess whether a species was in danger of extinction "throughout all . . . of its range." To be sure, "[w]e must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." United States v. Cabaccang, 332 F.3d 622, 627 (9th Cir. 2003). But Congress's use of "species," does not make its use of "all" unnecessary. As used in "all or a significant portion of its range," "all" provides an

- 6 -

indication of what would make a portion of a species' range significant. It serves a similar function as "all" in a Federal Water Pollution Act provision that includes the representatives of certain "entities having jurisdiction over all or a significant part of the estuary" in a National Estuary Program management conference. 33 U.S.C. § 1330(c)(2). By using "throughout all . . . of its range," in its definition of an endangered species, Congress made sure that the geographic scope of a portion of a species' range was at least one of the factors the defendant must consider when weighing its significance. One must determine the full boundaries of the range to determine whether a portion is significant. Moreover, common English usage accepts some level of redundancy without violating a canon of statutory construction. It was more natural for Congress to say "all or a significant portion" than to just say "a significant portion." That is the way we speak.

Second, the defendant contends that the ESA's listing provision suggests that endangered and threatened species are not necessarily species. The ESA states that the defendant:

> [S]hall publish in the Federal Register a list of all species determined by him or the Secretary of Commerce to be endangered species and a list of all species determined by him or the Secretary of Commerce to be threatened species. Each list shall refer to the species contained therein by scientific and common name or names, if any, specify with respect to each such species over what portion of its range it is endangered or threatened, and specify any critical habitat within such range.

16 U.S.C. § 1533(c)(1). The defendant asserts that the last sentence is inconsistent with the ESA's definitions of endangered and threatened species because it "indicates that a species may be found to be endangered or threatened only in a portion of its range." Cross Motion for Summary Judgment at 7. But this is entirely consistent with the ESA's definitions of endangered and threatened species. We already know that an endangered species may be in danger of extinction, or "endangered," throughout only a significant portion of its range. Similarly, a threatened species may be likely to become an endangered species within the foreseeable future, or "threatened," throughout only a significant portion of its range. The ESA's listing provision simply tracks the definitions of endangered and threatened species.

1    For example, if the defendant were to find that the Gunnison's prairie dog was in

2  danger of extinction throughout a significant portion of its range, the montane portion, then

3  the Gunnison's prairie dog would be an endangered species.  The defendant would then list

4  the Gunnison's prairie dog by referring to its scientific and common names and specifying

5  the montane portion of its range.  On the other hand, if the montane Gunnison's prairie dog

6  were a subspecies or a distinct population segment, it would also be a species capable of

7  being an endangered species endangered over only a portion of its montane range.

8    The defendant would rewrite Congress's definition of an endangered species such that

9  it could refer to a portion of the Gunnison's prairie dog.  Were he to identify the montane

10  Gunnison's prairie dog as an endangered species, however, the defendant would then need

11  to list it.  To do so, he would have to specify over what portion of the montane Gunnison's

12  prairie dog's range it was endangered.  But he does not account for the possibility of the

13  montane Gunnison's prairie dog being endangered over only a portion of its range because

14  he would redefine the endangered species as a portion of a species endangered throughout

15  a significant portion of the species' range.  If endangered species are limited to the areas over

16  which they are endangered, as the defendant proposes, every endangered species would be

17  endangered over its entire range.  As defendant concedes, however, the listing provision

18  specifically contemplates an endangered species which is only endangered over a portion of

19  its range.

20    The defendant would apparently address this issue by identifying the montane

21  Gunnison's prairie dog as an endangered species and specifying that portion of the

22  Gunnison's prairie dog's range in which the Gunnison's prairie dog was endangered.  But

23  "the each such species" referred to in the listing provision is the endangered or threatened

24  species which is being listed.  16 U.S.C. § 1533(c)(1).  Having identified the montane

25  Gunnison's prairie dog as the endangered species instead of the Gunnison's prairie dog, the

26  defendant would be unable to refer to the Gunnison's prairie dog or its range when listing the

27  montane Gunnison's prairie dog. The ESA's listing provision does not suggest that Congress

28

ambiguously defined endangered and threatened species as species. In fact, it undercuts the defendant's reading of the ESA.

Congress defined endangered and threatened species as species under the plain language of the ESA. Therefore, this "is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43, 104 S. Ct. at 2781. The defendant cannot determine that anything other than a species, as defined by the ESA, is an endangered or threatened species. Because the montane Gunnison's prairie dog cannot warrant listing in accordance with the plain language of the ESA unless there is a species called the montane Gunnison's prairie dog, we set aside the defendant's Gunnison's prairie dog finding and remand the matter to the agency for further action consistent with this Order. The plaintiff's remaining contentions are moot.

**III**

The defendant contends that the ESA gives him the flexibility to provide different levels of protection to the same species. We agree. The ESA permits the defendant to treat subspecies and distinct population segments of a species differently by designating them as separate species. While there may be ways to treat prairie dogs in the prairie differently than prairie dogs in the mountains under the statute, altering Congress's definition of endangered and threatened species is not one of them.

**IT IS THEREFORE ORDERED DENYING** as moot the defendant's motion to strike the plaintiff's employee declarations (doc. 59-2).

**IT IS FURTHER ORDERED DENYING** as moot the defendant's motion to strike Gunnison County's amicus brief (doc. 67).

**IT IS FURTHER ORDERED GRANTING** the defendant's motion to strike the plaintiff's "reply" to its statement of facts (doc. 69). We strike paragraphs 1-25 from the plaintiff's response to the defendant's statement of material facts (doc. 61-1).

**IT IS FURTHER ORDERED GRANTING** the plaintiff's motion for summary judgment (doc. 51). We set aside the defendant's Gunnison's prairie dog finding of February 5, 2008 and remand the matter to the agency for further action consistent with this Order.

1   **IT IS FURTHER ORDERED DENYING** the defendant's cross motion for

2   summary judgment (doc. 59).

3   The clerk shall enter final judgment in favor of the plaintiff and against the defendant.

4   DATED this 30th day of September, 2010.

5

6   _____
    Frederick J. Martone

7   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28